# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : Chapter 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : Bankruptcy No. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : Bankruptcy NO. 04-37132 |
| BAGGA ENTERPRISES, INC. | : Bankruptcy No. 04-37136 |
| Debtor(s) | : |

| | |
|---|---|
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF UNITED | : |
| MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF JAMUNA REAL | : |
| ESTATE LLC; GARY SEITZ, IN HIS | : |
| CAPACITY AS CHAPTER 7 TRUSTEE OF | : |
| BAGGA ENTERPRISES, INC. AND FL | : |
| RECEIVABLES TRUST 2002-A | : |
| Plaintiffs | : |
| v. | : |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : |
| RAVINDER CHAWLA; HARDEEP CHAWLA; | : |
| WELCOME GROUP, INC.; K&P REAL | : |
| ESTATE LLC; WORLD APPAREL PRODUCTS, | : |
| INC. D/B/A/ SJM TRADING COMPANY, | : |
| D/B/A TEN TIGERS; AMERICAN | : |
| MERCHANDISE CO., INC., A/K/A | : |
| AMERICAN MERCHANDISING CO.,INC.; | : |
| 21ST CENTURY RESTAURANT SOLUTIONS, | : |
| INC.; BRAND TRADE, INC.; H.B. | : |
| PROPERTIES, INC.; H.B. PROPERTIES | : Advs. No. 06-128 |
| LLP; SANT PROPERTIES; JOHN AND | : Advs. No. 06-129 |
| JANE DOES AND ABC COMPANIES | : Advs. No. 06-130 |
| Defendants | : |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**<u>Introduction</u>**.

Before the Court is a Motion for Reconsideration and for Leave to Amend Complaint.

The Motion is opposed.   A hearing was held April 22, 2008 and the matter was taken under

advisement.  For the reasons set forth below, the Motion will be granted in part and denied in part.[1]

*What the Movants Seek*

The Motion has been filed jointly by all of the Plaintiffs, although the relief sought varies among them.  The principal plaintiff in this litigation is FL Receivables Trust 2002A, a special purpose business trust organized under the laws of the state of Delaware (the "Trust").  The other two Plaintiffs are the Chapter 7 Bankruptcy Trustees of entities to which the Trust made the defaulted loans which underpin the lawsuit.  ("the Bankruptcy Trustees") (The Trust and the Bankruptcy Trustees are sometime herein collectively referred to as "Plaintiffs.")  Relief of several sorts is sought: first, the Trust asks the Court to set aside its February 6, 2008 summary judgment ruling which dismissed the Trust's RICO claims with prejudice;[2]  second, a corollary to that request asks that the Trust be permitted to amend and reassert the RICO claims which the February ruling dismissed; third, the Trust asks for leave to amend counts in the Complaint which were previously dismissed for failure to state a claim;[3] fourth, the Bankruptcy Trustees seek permission to amend the Complaint to raise their own independent RICO claims; finally, the Trust asks for clarification on a particular point in the Court's February Opinion.

*Summary of Holdings*

The **Motion for Reconsideration** of the February 6, 2008 Opinion and Order granting Summary Judgment and dismissing the Trust's RICO claims is denied.

---

[1] Because the Court has previously set forth the operative background facts, familiarity with them will be presumed and the entire history will not be presented.

[2] *In re Jamuna Real Estate, Inc.*, 382 B.R. 263 (Bankr.E.D.Pa.2008)

[3] *In re Jamuna Real Estate, Inc.*, 365 B.R. 540 (Bankr.E.D.Pa.2007)

The **Motion for Leave to Amend Complaint** is granted in part and denied in part as follows:

### Counts I and II (RICO and Conspiracy):

The Trust's request for leave to amend the Complaint to replead the claims which were dismissed by the Court's February 6, 2008 ruling is denied; the Trust's RICO claims are limited to harm alleged to have been *directly* suffered by it.

The Bankruptcy Trustees' request for leave to amend to plead RICO and RICO Conspiracy claims is denied;

**Count IV (Fraudulent Transfer)**: Leave will be granted to amend the Complaint as proposed.

**Count IX (Fraud, Conspiracy to Commit Fraud)**: Leave to amend the Fraud Count will be denied; however, leave will be granted to plead a cause of action for conspiracy to commit fraud as to Pratpal Bagga and Ravinder Chawla.

**Counts X and XV (Alter Ego)**: Leave to amend these Counts will be denied.

**Counts XI and XIII (Breach of Fiduciary Duty)**: Leave to amend these Counts will be denied.

The **request for clarification** is addressed, but the Trust's suggested interpretation of the language in question is rejected.

*Standard for Reconsideration*

The Court begins with the request for reconsideration. Such relief is normally granted for one of four reasons: that there has been an intervening change in controlling law; that the movant has available newly discovered evidence not previously available; that the challenged

ruling is clearly wrong as to the law; or that it risks a manifest injustice.  *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *In re Wile*, 310 B.R. 514, 516 (Bankr.E.D.Pa.2004) *citing Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). As stated by the court in *Keyes v. National Railroad Passenger Corporation*, 766 F.Supp. 277, 280 (E.D.Pa.1991): "The purpose of a Rule 59(e) motion is to allow the court to reevaluate the basis of its decision.... Motions for reconsideration are not at the disposal of an unsuccessful party to "rehash" the same arguments and facts previously presented." *See also Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993), *aff'd in part, rev'd in part on other grounds*, 57 F.3d 270, 272 (3rd Cir.1995).  "[W]hatever may be the purpose of Rule 59(e) it ... [was not] ... intended to give the unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D.Va.1977).  Federal courts should grant such motions sparingly because of their strong interest in finality of judgment." *Selaras v. M/V Cartagena de Indias*, 959 F.Supp. 270, 272 (E.D.Pa.1997) *quoting Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa.1995).  The decision whether to grant or deny a Rule 59(e) Motion is entrusted to the sound discretion of the Court.  *In re Eagle Enterprises, Inc.*  259 B.R. 73, 76 (Bankr. E.D. Pa 2001)

*The Arguments for Reconsideration*

Plaintiffs' opening brief never specifically states which of the foregoing traditional bases— i.e.,  change in the law, new evidence, legal error, or manifest injustice—warrants reconsideration.  They frame the issue instead, as being that the Court's adverse summary

4

judgment ruling relative to the RICO claims being asserted by the Trust was the result of a

mutual mistake on the part of the Trust and its counter-party, Captec, such that reconsideration

should be given and a different result obtain.   The Trust argues that, although it may have never

received an express, written assignment of Captec's legal claims, that, nevertheless, was what

the parties  intended.  Plaintiffs' Brief, 2.  Indeed, to confirm that fact (and their alleged mutual

mistake) the two parties have recently memorialized their intention in the form of a Confirmation

and Clarification Agreement.  *Id.*, 5.  As a result, the Trust maintains, the Court should reform

the assignment agreement to reflect the parties' true bargain.  Moreover, the Trust adds, due

process requires that the real party in interest—Captec—be allowed to ratify the Plaintiff's

decision to file the RICO claims.

Defendants' response steers the discussion back to the strictures of Rule 59(e).  They

make a number of points.  First, they stress that the evidence which the Trust now offers as to the

original intent regarding an assignment of RICO claims is not *newly discovered*, but, rather,

*newly manufactured* in response to the adverse summary judgment ruling, and that it should

therefore be disregarded; second, they argue that, aside from the evidentiary proffer's dubious

timing, Defendants would be prejudiced if the Court were to consider it; third, they argue that

this new evidence is proof positive that Defendants lack what the Third Circuit specifically

required in *Lerman v. Joyce Int'l, Inc.,* 10 F.3d 106 (3d Cir. 1993) as the predicate for an

assignee to assert RICO claims*; to wit*:  that the legal rights in question have been expressly

assigned; fourth, they argue that the request for reformation is equitable in nature and is,

therefore, not properly brought before the Court via a Motion; finally, they argue that

reformation would require joinder of a non-debtor party, thereby depriving the Court of

5

jurisdiction.  *See generally* Defendants' Brief, 7-22.

These arguments prompted the Trust to shift ground somewhat.  In a reply brief, it rejoins with two points: first, the Trust clarifies that the thrust or basis of the instant motion is to prevent what it asserts will be a manifest injustice; second, the Trust reiterates and stresses to the Court that the agreement recently entered into between Captec and the Trust does no more than "clarify" what was originally intended by those parties with regard to the assignment of legal claims.  At oral argument the Trust confirmed that its motion was essentially premised on "fairness."   It asks the Court to reform the original assignment to reflect the true intent of the parties.  See Transcript of Hearing ("T.") 4-22-08, 6-7.

The Court finds the Trust's arguments unpersuasive.  However unfair the February 6 ruling may appear to the Trust, it seeks to establish its present position by introducing *new* evidence.  The gravamen of its position is based on an argument as to what the parties are alleged to have originally intended regarding Captec's legal claims *and* a new document designed to elucidate that intention.  This tactic must fail.  If the parties originally intended to assign legal claims, but mistakenly neglected to do so, this clearly should have been the central thesis of the Trust's original response.  The Trust's original contention, however, a position which it both vigorously and adamantly advocated, was that the original documents were sufficient on their face for purposes of assigning the subject RICO claims.  Unfortunately for the Trust, in hindsight the best defense laid not in waging a good offense.   Put differently, when its affirmative strategy failed it, the Trust obviously determined to shift its stance, acknowledging that its documentation was deficient and creatively formulating a means by which to correct matters.  Although creative, the Court finds the Trust's efforts contrived.  Regrettably, the

6

Trust's argument seems little more than a fairly transparent attempt to secure the proverbial

"second bite" at the apple.  Case law does not sanction this.  It is the general rule that when

evidence is not newly-discovered, a party may not submit that evidence in support of a motion

for reconsideration.  *U.S. v. Jasin*, 292 F.Supp.2d 670, 676 (E.D.Pa.2003)  By definition,

evidence which could have been offered earlier is not newly-discovered.  *Plaisted v. Geisinger*

*Med. Ctr.*, 210 F.R.D. 539, 542 (M.D.Pa. 2002).  Clearly that stricture applies here.  There may

have been a mistake mutually made by both Captec and Trust when they entered into the

Assignment Agreement; however, that does not excuse the Trust for failing to raise it when

Defendants sought summary judgment.  Notions such as intent and mistake, while obviously

weighty, are not determinative at this stage of the litigation.  *See also In re Covino*, 241 B.R.

673, 680 (Bankr.Idaho 1999) (holding that defendant could not offer on reconsideration a

statement to "more thoroughly vet this issue and present what they believe might be more

compelling testimony or the alleged contract of sale" as evidence not "newly discovered"); *see*

*also Interdigital Communications Corp. v. FIC*, 403 F.Supp.2d 391, 393 (E.D.Pa.2005) (holding

that claim of mutual mistake may not be injected into litigation for first time on motion for

reconsideration)   The Trust chose to defend the standing challenge leveled at it by insisting that

its documentation was sufficient.  Only after the Court had ruled against it did the Trust change

tack to adopt (and document) a theory based on deficient documents and mutual mistake.

Because this argument (and the supporting documentation) could have been advanced

previously, neither the argument, nor the documents, can be placed into issue now.  For this

reason, Plaintiffs' motion for reconsideration will be denied.

At the risk of belaboring this issue, certain corollary observations bear mention before

moving on.  The first is that in this Court's view it would be a highly ill-advised exercise of the

Court's discretion to accept the Trust's argument.  If a litigant could avoid the result in this case

through the stratagem the Trust urges, it seems axiomatic that almost no litigant could ever lose

the issue.  There is no evidence, for example, that the disappointed Plaintiffs in *Gulfstream III*

*Assoc v. Gulfstream Aerospace Corp.,*995 F.2d 425 (3d Cir. 1993) or *Linerboard Antitrust Litig.,*

443 F.Supp.2d 703 (E.D. Pa. 2006) were opposed or contradicted by their counterparties when

they argued that the parties' documentation was intended to convey certain claims.  Just as the

Trust seeks to do, those Plaintiffs might have sought to "confirm" and to "clarify" their

intentions after the fact of an adverse ruling.  Permitting such a facile means of escaping the

stricture of the *Gulfstream/Lerman* "express assignment" rule would effectively eviscerate it.

The Court declines to do so.

Indeed, the Trust's "solution" seems so disingenuous as to arguably implicate the

doctrine of judicial estoppel.  When invoked the doctrine of judicial estoppel bars a litigant from

asserting a position that is inconsistent with one previously asserted.  See, *Ryan Operations G.P.*

*v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996).  Three requirements must be

met before the Court may properly apply judicial estoppel.  First, the party to be estopped must

have taken two positions that are irreconcilably inconsistent.  Second, judicial estoppel is

unwarranted unless the party has changed its position "in bad faith - i.e., with an intent to play

fast and loose with the Court."  Finally, the use of judicial estopped must be "tailored to addres

the harm identified."  *Id.*

Measured against the above, the Court does not find judicial estoppel to be warranted -

but not necessarily by a wide margin.  Certainly the Trust has advocated two inconsistent

positions; to wit that its documentation was sufficient to assign RICO claims *and* that it was not.

Furthermore, attempting to work around this dilemma through the artifice of belatedly created

documentation has a certain air of playing "fast and loose" with the Court.  At bottom, however,

the Court does not consider the Trust to be proceeding in bad faith.  The Trust is simply facing

what is obviously a very serious setback *vis a vis* the present lawsuit.  Its present tactics may be

the product of frustration and/or desperation, but they do not ring of bad faith.  Moreover,

invocation of the doctrine of judicial estoppel is unnecessary, as the court's denial of the Trust's

request is an adequate remedy under the circumstances.

*Reformation*

Perhaps anticipating that the Court would decline to consider the new evidence

introduced by it, the Trust would have the Court go back in time to change the record.  The Trust

submits that because Captec and the Trust intended to assign legal claims when they entered into

their agreement, the Court should reform that agreement accordingly.  The Trust reemphasizes

that it has already memorialized such an agreement with Captec.  All that is needed, it explains,

is the Court's imprimatur and the RICO claims can be reinstated as if they had been assigned *ab*

*initio*.  *See* Plaintiffs' Brief, 3, 7-8.  For their part, Defendants oppose such relief for two reasons.

First, they say, reformation is an equitable remedy and may only be requested in this Court by

filing an adversary proceeding.  Second, they argue that reformation would require joining

Captec as a party, thereby depriving this Court of jurisdiction.

*Procedure*

Defendants argue that because reformation is a form of equitable relief it must be brought

by filing an adversary proceeding.  The Bankruptcy Rules list among adversary proceedings "a

proceeding to obtain an injunction or other equitable relief, …"  B.R. 7001(7)  Reformation of a

contract is a creature of equity.  *In re SunBrite Cleaners, Inc*., 284 B.R. 336, 343

(Bankr.N.D.N.Y. 2002).  Any request for reformation of the assignment agreement, it follows,

should have been brought by filing an adversary proceeding.

*Joinder and Jurisdiction*

Aside from *how* Plaintiffs bring their reformation request, Defendants point out a

problem with *where* that relief is sought.  The reformation the Plaintiffs seek requires the joinder

of Captec; however, Defendants explain, Captec is a non-debtor which would be outside the

limited jurisdiction of the bankruptcy courts.  For its part, the Trust sees no jurisdictional

problems whatsoever.  Under Rule 17, it argues, Captec as the real party in interest, may ratify

the Trust's decision to file suit.  Having considered these questions the Court finds the

Defendants to have the better part of the argument.

Federal Rule of Civil Procedure 19[4] determines when joinder of a particular party is

required.  In pertinent part, the rule provides:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party.* A person who is subject to service of process and whose
> joinder will not deprive the court of subject-matter jurisdiction must be joined as
> a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or

---

[4]  Made applicable by B.R. 7019.

10

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

F.R.C.P. 19(a)(1).  A court must first determine whether a party should be "joined if feasible" under Rule 19(a).  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc*., 11 F.3d 399, 404 (3d Cir. 1993).  If the party should be joined but joinder is not feasible because it would destroy jurisdiction, the court must then determine whether the absent party is "indispensable" under Rule 19(b).  *Id*.  If the party is indispensable, the action cannot go forward.  *Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053-54 (3d Cir.1988).

Because Rule 19 limits a plaintiff's right to structure litigation as he or she so chooses,[5] the Court begins with the question of whether Captec must be joined here.  *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 (3d Cir.1996) (observing that the rule is intended to avoid piecemeal litigation)  Defendants' rely on clause (A) of the rule, arguing that without Captec "complete relief cannot be afforded."  Defendants' Brief, 17.  The Court is constrained to agree with Defendants, and for the added reason that without an adjudication of Captec's rights in this litigation there is a risk to Defendants of "multiple … obligations."  F.R.C.P. 19(a)(1)(B)(ii)  The Trust says that Captec assigned its legal claims to them, but Defendants cannot know that with certainty until the issue is litigated.  So whether the issue is framed in terms of complete relief among the parties, or the risk of a second lawsuit, Defendants' argument that Captec is a necessary party is persuasive.

Having found that Captec is a required, or necessary, party, the Court turns to the

---

[5]  *See  Lopez v. Martin Luther King, Jr. Hosp.*, 97 F.R.D. 24, 28 (D.C. Cal. 1983) ("Compulsory joinder is the exception to the otherwise general policy of allowing the plaintiff to decide who shall be parties to the lawsuit.").

question of whether its joinder is feasible here.  Feasibility of joinder under Rule 19 refers to "a

person who is subject to service of process" within this Court's jurisdiction and "whose joinder

will not deprive the court of jurisdiction over the subject matter of the action." *Showtime Game*

*Brokers, Inc. v. Blockbuster Video, Inc.*, 151 F.R.D. 641, 647 (S.D.Ind.,1993).  And therein,

Defendants' argument continues, lies the problem for the Trust.  The rule requires that a party's

joinder not destroy jurisdiction. Yet that, Defendants maintain, is exactly what the joinder of

Captec would do: this Court's jurisdiction is limited to "core" matters or those which affect the

Debtors' estate.  It does not, they insist, extend to a reformation action between two non-debtors.

Defendants' Brief, 18-20.  On these facts, the Court agrees.

Jurisdiction of the bankruptcy courts begins with the grant of authority to the district

court:

> [N]otwithstanding any Act of Congress that confers exclusive
> jurisdiction on a court or courts other than the district courts, the
> district courts shall have original but not exclusive jurisdiction of
> all civil proceedings arising under title 11, or arising in or related
> to cases under title 11.

28 U.S.C. § 1334(b).  From there, bankruptcy cases are referred to the bankruptcy judges:

> Each district court may provide that any or all cases under title 11
> and any or all proceedings arising under title 11 or arising in or
> related to a case under title 11 shall be referred to the bankruptcy
> judges for the district.

28 U.S.C. § 157(a).  The District Court for the Eastern District of Pennsylvania has referred all

such cases.  *See* Local Rules of United States District Court for the Eastern District of

Pennsylvania, L. R. 1.1.1(d); *In re Beck*, 283 B.R. 163, 170 n.13 (Bankr.E.D.Pa. 2002).

The bankruptcy judge is empowered to enter final judgment on those matters central to a

12

bankruptcy case:

> Bankruptcy judges may hear and determine all cases under title 11
> and all core proceedings arising under title 11, or arising in a case
> under title 11, referred under subsection (a) of this section, and
> may enter appropriate orders and judgments, subject to review
> under section 158 of this title.

28 U.S.C. § 157(b)(1).  The Third Circuit has held that a proceeding is core if it involves a

substantive right provided by title 11, or if it is a proceeding that, by its nature, could arise only

in the context of bankruptcy.  *In re Marcus Hook Dev. Park, Inc.* 943 F.2d 261, 267 (3d Cir.

1991).  That is certainly not the case with a matter between two non-debtors.

However, in addition to cases and core proceedings, the bankruptcy judge may also hear

"related" proceedings:

> A bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title 11. In
> such proceeding, the bankruptcy judge shall submit proposed
> findings of fact and conclusions of law to the district court, and
> any final order or judgment shall be entered by the district judge
> after considering the bankruptcy judge's proposed findings and
> conclusions and after reviewing de novo those matters to which
> any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).   A proceeding is "related to" a bankruptcy case if it "could conceivably

have [an] effect on the estate being administered in bankruptcy."  *Pacor Inc. v. Higgins*, 743

F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by, Things Remembered, Inc. v.

Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).  *See* 28 U.S.C. § 157(b).  The

question, therefore, is whether an equitable proceeding between Captec and the Trust would

have any effect on the bankruptcy estates.

The Court finds that it would not.  The Trust and Captec are non-debtors who seek to

clarify their rights *inter se* regarding ownership of certain legal claims.  However the Court

might rule on that question, the ruling will not, standing alone, impact the bankruptcy estates of

these debtors.  A ruling favorable to the Trust would merely serve to remove an insuperable

impediment the Trust otherwise faces with respect to the prosecution of that portion of this

lawsuit which is predicated upon assigned RICO claims.  Put differently, the Court rejects as too

attenuated any argument that the "conceivable effect" standard of *Pacor*  is satisfied because, if

the Trust is successful in a separate reformation lawsuit, it might be successful in a subsequent

lawsuit against the Defendants, which might, in turn, increase the assets or reduce the liabilities

of the Bankruptcy estates.  Accordingly, should the Court be presented with a proper request for

reformation, it would lack jurisdiction to hear it.  Under these circumstances this Court will not,

therefore, reform the Assignment Agreement.

*Real Party in Interest Rule; Standing Requirement*

For the Trust, however, joinder and jurisdiction are not the issues.  It argues that the party

with RICO standing (i.e., Captec) may simply authorize the Trust to prosecute those claims.

Reply Brief, 11.  Plaintiffs refer in that regard to the real party in interest rule which provides, in

pertinent part:

> (a) Real Party in Interest.
>
> (1) *Designation in General*.  The action must be prosecuted in the name of the
> real party in interest.…
> …
> (3) *Joinder of the Real Party in Interest.* The court may not dismiss
> an action for failure to prosecute in the name of the real party in
> interest until, after an objection, a reasonable time has been
> allowed for the real party in interest to ratify, join, or be substituted
> into the action. After ratification, joinder, or substitution, the
> action proceeds as if it had been originally commenced by the real
> party in interest.

F.R.C.P. 17, made applicable by B.R. 7017.  Defendants' response refers back to the issue of

jurisdiction.  They maintain that the Trust lacked standing in the first instance to even file the

RICO claims.  As such, there is nothing that can be ratified or otherwise authorized by Captec.

Defendants' Brief, 26-28.

The Court finds Defendants' argument convincing.  The premise of Defendant's

argument is the effect of the February 6 ruling which denied RICO standing.  Standing has been

defined by the Supreme Court as the "irreducible constitutional minimum" for federal court

jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)

A party's standing to raise a claim must exist at *all* stages of the litigation.  *Public Interest*

*Group of New Jersey v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) (emphasis

added).  In a word, standing is jurisdictional.  *Edgar v. Avaya, Inc.*, 503 F.3d 340, 344 n.6 (3d

Cir. 2007)  And these jurisdictional boundaries may not be expanded by rules of procedure.  *See*

B.R. 9030 ("These rules shall not be construed to extend or limit the jurisdiction of the United

States District Courts."); *see also Glus v. G.C. Murphy Co.*, 562 F.2d 880, 886 (3d Cir.

1977)(citing F.R.C.P. counterpart, Rule 82).  Likewise, Congress has also recognized that "such

[rules of practice and procedure proscribed by the Supreme Court] shall not abridge, enlarge or

modify any substantive right." 28 U.S.C. § 2072(b); *see also Zurich Ins. Co. v. Logitrans, Inc*.,

297 F.3d 528, 531 (6th Cir.2002) (citing statute).  The Trust cannot overcome its lack of standing

by invoking a rule of procedure.  *See In re Spree.com Corp*., 295 B.R. 762, 775

(Bankr.E.D.Pa.2003) (holding that absence of standing precluded party from substituting real

party in interest); *see also Assoc. Insur. Mgmt Corp. v. Arkansas General Agency, Inc.*, 149 F.3d

794, 797 (8th Cir. 1998) (explaining that ratification under Rule 17 cannot retroactively confer

jurisdiction)  The Trust's "real party in interest" argument thus fails.

But even if the Court were to find that Trust had a stake in the RICO controversy, the real

party in interest rule would not apply here.  The Advisory Committee's notes to the rule explain:

> In its origin the rule concerning the real party in interest was
> permissive in purpose: it was *designed to allow an assignee to sue*
> *in his own name*. That having been accomplished, *the modern*
> *function of the rule in its negative aspect is simply to protect the*
> *defendant against a subsequent action by the party actually*
> *entitled to recover, and to insure generally that the judgment will*
> *have its proper effect as res judicata.*

Fed.R.Civ.P. 17 (advisory committee notes 1966) (emphasis added). The real party in interest

rule was designed to alter the common law rule which required the assignee of a chose in action

to sue for relief in the name of the assignor.  *International Rediscount Corp. v. Hartford*

*Accident and Indemnity Company*, 425 F.Supp. 669, 675 (D.Del.1977)

Because the February 6 ruling found that the Trust is *not* an assignee of Captec's legal

claims, the Trust is not an entity with an interest that the rule is designed to protect.  By the same

token, Defendants no longer need to fear multiple liability as to the same claim.  *See Icon Group,*

*Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987) ("The essential purposes of

Rule 17 and Rule 19 are to ensure that a judgement will have *res judicata* effect"); *cf. Topa*

*Equities, V.I., Ltd. v. Bared Jewelers of the V.I., Inc.*, 2002 WL 1765780 *8 (Terr.V.I.) rev'd on

other grounds, 332 F.Supp.2d 814 (D.V.I. 2004)  ("Ratification requires that *multiple real*

*parties* in interest be bound by a single adjudication.")  If there was no assignment in the first

place, (which the Court has held to be the case) none of the risks which the rule is designed to

protect against exist.

16

Moreover, the Trust's attempt to use the rule under these circumstances is a further

distortion of the rule's purpose.  As the Advisory committee also explains, the rule

> is intended to prevent forfeiture when *determination of the proper party to sue is difficult or when an understandable mistake has been made*. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, *and have the benefit of suspension of the limitation period.* It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be *substituted to take advantage of the suspension* of the limitation period.

Fed.R.Civ.P. 17, *supra* (emphasis added); *see also Feist v. Consolidated Freight Corp*., 100

F.Supp.2d 273, 276 (E.D.Pa.1999) (quoting advisory committee note); 6A Wright, Miller &

Kane, *Federal Practice and Procedure: Civ*.2d § 1555 (1990).  The Trust has yet to offer a

satisfactory explanation as to how it came to be that it understood itself as having standing to

press RICO claims.  The assignment documents rather clearly evince no such interest.  The

Court's own review of the documents reveals that it is not particularly difficult to ascertain

whether legal claims were among the assets assigned.  *See generally* Opinion, 382 B.R. 263

(Bankr.E.D.Pa.2008)  More importantly, the timing of the Trust's decision to obtain ratification

from Captec generates considerable skepticism on the part of the Court.  Why, for instance, once

standing was first raised, did the Trust not immediately seek out Captec as they have for present

purposes?  It was then that the shortcomings in the assignment documents were first brought to

the Trust's attention.  The Trust took no action.  Instead, it attempted to refute the premise of

Defendants' argument that the documents did not, in fact, effect an assignment of legal claims.

Throughout the resolution of that issue, the Trust maintained that the Assignment Agreement and

the related documents did, indeed, assign Captec's rights to any legal claims against the

Defendants.  This strategy may have been driven by the passing of the applicable statute of

limitations as to Captec.[6]  *See* Defendants' Brief, 28-30; Plaintiffs' Reply Brief, 10.  Whatever

the thinking may have been, the strategy was unfounded and judgment was entered against the

Trust.  If anything, fairness dictates that the Defendants should be entitled to rely on that ruling.

*Leave to Amend*

The Court turns its attention to the second part of this Motion: the request for leave to

amend.  The summary judgment ruling did not dispose of the RICO claims entirely.  Judgment

was entered in Defendants' favor only as to those claims to which Plaintiff had succeeded by

*assignment*.  That ruling did not preclude Plaintiff from raising RICO claims for harms

*independently* suffered.  *See* Opinion, 28; 382 B.R. at 279.  Plaintiff was given two weeks to

refile RICO counts which alleged *direct* harm by the Defendants.

The present Motion seeks to do that and more.  Despite the Court's ruling, Plaintiffs

maintain that its *direct* RICO claims are in substance no different from the *assigned* claims.  As a

result, they want to replead the very same claims because, they explain, "so much more is known

now."  *See* Plaintiffs' Brief, 12-13.  Exactly what that phrase means is never made clear.  As

such, leave essentially is requested to restate in their entirety the dismissed RICO claims.

---

[6] Civil RICO actions are subject to a four year limitations period.  *Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 1079 (2000)

In addition, Plaintiff also hopes to amend those claims which were dismissed pursuant to Rule 12(b)(6) over one year ago. For the most part, those dismissals pertained to Mrs. Bagga and/or Messrs. Chawla and were without prejudice. Thus, the present motion also constitutes a request for leave to amend claims, some of which were disposed of on their merits, and others which were facially deficient.

*Applicable Standard*

Amendment of pleadings is governed by Fed. R.Bankr.P. 7015, which makes applicable Fed.R.Civ.P. 15. The rule provides, in pertinent part:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court* or by written consent of the adverse party; and *leave shall be freely given when justice so requires*.

Fed.R.Civ.P. 15(a) (emphasis added). The Supreme Court has made it clear that the application of this presumption is "a mandate to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the policy of trying cases on their merits. *Id.* It also avoids the possibility of the opposing party suffering prejudice. 6 Wright & Miller, *Federal Practice and Procedure, Civ.2d* § 1487. The precise delineation of when leave should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge. *NAACP v. Harrison*, 907 F.2d 1408, 1417 (3d Cir.1990). This requires the Court to consider the position of *both* parties and the effect that the request will have on them. *See* Wright & Miller, *supra* at § 1487. For that reason, the court may deny a request to amend when

19

the moving party has demonstrated undue delay, bad faith or dilatory motive or where the

amendment would prejudice the opposing party. *See Foman, supra, id.*; *Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)   Equally, an amendment will be denied where it is

futile. *Id.*  The Defendants maintain that the request to amend suffers from all of these flaws.

*See generally* Defendants' Briefs.

*Timing and the Burden of Proof*

The request for leave to amend is for claims, some of which are reduced to judgment, and

others not.  The different postures require an analysis of whether burdens of proof are affected.

Beginning with the claims dismissed without prejudice pursuant to Rule 12(b)(6), the Court

observes the traditional rule that such a request will be liberally granted.  Thus it is up to the

non-moving party to come forward with grounds to support refusal.  With regard to the request

to amend the RICO claims, the Court notes the higher threshold applicable to adjudicated claims.

Interests of finality matter here.  While it is well-settled that when judgment has been entered,

the presumption favoring liberal amendments is reversed after entry of judgment (*see, e.g.,*

*Werner v. Werner*, 267 F.3d 288, 296 (3d Cir.2001)), that rule is premised on the judgment in

question being *final*.  3 *Moore's Federal Practice*, § 15.14[4] (1999) ("After *final* judgment and

on appeal, amendments may be possible, but the pleader's burden increases. Subsequent leave to

amend will be granted "sparingly" and only if justice requires.") In this case, the Court

concludes that the judgment is interlocutory as opposed to final; there is much left in this case to

decide.  *See In re Escher*, 2007 WL 2892008 **2-4 (Bankr.E.D.Pa.) (discussing finality in the

contexts of summary judgment in adversary proceeding).  For that reason, this burden of proof is

likewise on the challenger to demonstrate either prejudice, undue delay, dilatory motive, or

20

futility.

*Delay*

The Court begins with the question of delay.  Defendants argue that the Trust is guilty of delay because the request to amend the dismissed claim is nothing more than a tardy motion for reconsideration.  Defendants' Brief, 38-39.  The Court, however, rejects this argument.

To be sure, there has been some delay.  Indeed, amendment is sought as to claims which were dismissed as of April 25, 2007, so the request comes more than 10 months after that ruling.  But there is more to this than just inactivity by the Trust.  It was the Defendants who, six months after obtaining a partially favorable ruling on their Motion to Dismiss, decided to challenge the standing of the Trust, at least as to RICO, and then challenge any standing whatsoever three months after that.  That is not the order of battle which the Court would have foreseen.

It is a fundamental principle of American jurisprudence that before a party may bring a case before a court, he must have standing to do so.  *See Lujan, supra,* (establishing the irreducible constitutional minimum of standing)  Standing, therefore, implicates the Court's jurisdiction, so the Court would have expected that question to be settled first.  But the parties disagree as to exactly when Defendants first knew that standing was a legitimate issue.  The Trust maintains that such information was produced in discovery years ago in the Welcome Group bankruptcy case.  *See* T. 11-1-07, 3-4.  Defendants dispute that contention explaining that they were not sure that they had the right assignment agreement until September 2007.  *Id.* 8-9.  Regardless of who is correct, responding to the Motion for summary judgment took up a great deal of the Trust's time between the ruling on the Motion to Dismiss and its decision to seek leave to amend those dismissed claims.  In other words, the Court cannot say that the Trust is

21

wholly to blame for any delay in these proceedings.

*Prejudice*

Defendants next argue that granting leave to amend the dismissed claims would cause them hardship.  They explain that dismissal of those claims occurred over one year ago.  Since then Defendants have undertaken discovery, but not as to those claims.  As a result, they contend, discovery will have to be reopened and the litigation will become lengthier and more expensive.

Whether that is supported by the record requires analysis of what, exactly, is being amended.  The parties will recall that the April 2007 ruling dismissed Count IV (fraudulent transfer) as to all defendants, Count IX (Common law fraud) as to Mrs. Bagga and the Chawlas, Counts X and XV (Alter Ego) as to the Chawlas, and Counts XI and XIII (Breaches of Fiduciary Duty) as to the Chawlas.  All of these dismissals occurred *without* prejudice.  These same counts reappear with the following changes: Count IV now clarifies that the fraudulent transfer claim is based on both federal and state law; the common law fraud claim of Count IX has been included to assert civil conspiracy; Counts X and XV (Alter Ego) have only cosmetic changes; and the same can be said of the changes to Counts XI and XIII (Breach of Fiduciary Duty).  How burdensome would it be to defend these claims?

From what appears in the record, not particularly.  In the same breath that they  claim hardship, Defendants assert that the amended claims are essentially unchanged.  If that is the case, then it is doubtful that much additional discovery would be required to mount a proper defense.  The only substantive change that the Court sees in the amendments is the addition of a conspiracy charge to the fraud claim.  But a good deal of that claim is derivative.  *See Loftus v.*

*SEPTA,* 843 F.Supp. 981, 988 (E.D.Pa.1994) ("Requiring that a complaint alleging conspiracy

flesh out in some detail the nature of the scheme does not run afoul of the admonition in

*Leatherman* .... Rather, in the context of a conspiracy, the 'short and plain statement' provision

of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that

animates the fair notice requirement of the rule."). In sum, the Court cannot see that all that

much additional discovery will be required. There is, then, very little in the way of demonstrable

prejudice shown.

*Futility*

But the fact that the amended claims come almost as they did originally can be fatal in

another way. If the dismissed claims are to be replead, but without material changes, how can

the Trust hope to survive another dismissal challenge? This is Defendants' next argument in

opposition to leave to amend: that such amendments would be futile. Defendants' Brief, 47.

The standard for futility is that an amendment would not survive a motion to dismiss for failure

to state a claim upon which relief could be granted  *See In re Burlington Coat Factory Securities

Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997). The Court will examine the claim of futility as to the

following counts which were dismissed without prejudice.

*Alter Ego*

Defendants begin with the viability of the alter ego claims (Counts X and XV). They say

that the amendment still fails to implicate HB Properties, LLP or its general partner, HB, Inc.

Neither are there allegations regarding undercapitalization, another earmark of corporate abuse.

Defendants Brief, 47-48. The Court begins with what is expressly alleged within the count.

Paragraph 281 is expanded to say that both the Bagga and the Chawlas "ignored the corporate

form of their respective companies." Formerly, it was the "Defendant Entities" whose corporate status was ignored. *Compare* Proposed Amendment ¶ 281 with original ¶ 253. Likewise, proposed ¶ 284 (originally ¶256) modifies its third sentence to say that both "the Baggas and the Chawlas caused the Debtors to commingle revenue." Formerly, it was the Debtor and the Defendant Entities who did the commingling. This was done, the changes go on, not to avoid making loan payments to Captec but to avoid the Defendants' obligation to repay their debts to the Debtors. At best, these changes are cosmetic.

Elsewhere, the Court sees little that helps the count's viability. The count incorporates all preceding allegations, so the Court has scoured the preceding 66 pages to find allegations that the Chawlas abused the corporate form. Again, the allegations involving Sant Properties, HB, LLP and HB, Inc. are clearly more in the nature of fraud or collusion among corporations than alter ego claims. There is some mention of the intermingling of funds, but this occurs *intra* corporation and not between corporation and owner. On this basis, the Court finds these counts to be futile as to the Chawlas. Accordingly, leave to amend will not be granted as to these counts.

*Breach of Fiduciary Duty*

The Chawla Defendants next challenge the sufficiency of the proposed amendments to the fiduciary claims. Counts XI and XIII charge the Chawlas with having breached a fiduciary duty to the Debtors. The Court has previously ruled that the complaint failed to allege that either Ravinder Chawla or Hardeep Chawla was a fiduciary of the Debtors or even exercised control over them. *See* 365 B.R. at 570-571. The same conclusion is reached here. Contrary to what is maintained in the Trust's Reply Brief, (@ 19) there is simply no allegation of fiduciary status or

24

significant control *as to the Plaintiffs* on the part of either individual.  Within the two counts, there is utterly no elucidation as to how it is that either defendant was a fiduciary.  Neither is the factual background enlightening.  Accordingly, as proposed Counts XI and XIII do not state a claim for breach of fiduciary duty, leave to amend will be denied.

*Common Law Fraud and the Effect of the February 6 Ruling*

Defendants' last challenge is to Count IX, which was formerly limited to a charge of common law fraud.  The proposed amendment would expand it to include a cause of action for *conspiracy to commit* fraud.  Defendants' argument here is not that the fraud claim is insufficient, but, rather, that the Court's February 6 Opinion bars the claim entirely.  In that earlier ruling, the Court found that Captec had failed to expressly assign to the Trust its rights to the RICO claims.  Based on that finding, the Court held that the Trust lacked standing to press RICO claims.  That holding, Defendants conclude, must extend to fraud claims as well.

For its part, the Trust disputes that premise, but in a rather oblique manner.  In its Motion, it asks for "clarification" of a certain sentence in the opinion.  The sentence in question appeared in the Court's discussion of whether a power of attorney independently operated to assign claims to the Trust.  There, the Court found that the Limited Power of Attorney which the parties had signed was merely a vehicle for effecting the Assignment; it was the Assignment that determined whether Captec had assigned legal claims as part of the bargain.  Salient terms in the Assignment ("Contracts" and "Contract Files") were defined as they were in the Interim Warehouse and Security Agreement.  In neither agreement were legal claims part of the definitions.  As a result, the Court wrote:

> The important point is that conspicuously missing in the definition
> of the term Contract and the phrases Contract File and Contract

> Documents is <u>any</u> reference to legal claims, demands, causes of
> action, etc.

Opinion, 22; *see* 382 B.R. at 276 (emphasis in original).  The Trust's query is whether this

reflects what it believes to be the Court's true intent: that the holding is limited only to the RICO

claims.  To the Trust, that sentence could be read by a "stranger" to preclude the Trust from

bringing any legal claims arising out the assigned loans.  Plaintiff's Brief, 13.  For that reason,

the Trust asks the Court to amend the above-quoted excerpt to read as follows:

> The important point is that conspicuously missing in the definition
> of the term Contract and the phrases Contract File and Contract
> Documents is <u>any</u> reference to legal claims, demands, causes of
> action, etc., *sufficient to effect an assignment of a RICO cause of
> action.*"

*Id.* (italics in original).

It seems  obvious what Plaintiffs' fear; to wit: that the above cited sentence constitutes a

finding that *no legal claims whatsoever* were assigned by Captec to the Trust and that such

finding is now the law of the case.  The effect of that would render futile any claim of fraud by

the Plaintiffs.

*Law of the Case*

The law of the case doctrine is a rule of preclusion.  It is concerned with the extent to

which the law applied in decisions at various stages of the same litigation becomes the governing

legal precept in later stages.  *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir.2002)

citing 18 *Moore's Federal Practice* § 134.20 (3d ed.1999).  The Supreme Court has defined the

law of the case as a precept that "'posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case.' This

rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' " *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The decision to apply the rule is within the trial court's discretion. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir.1993). It applies to both issues expressly decided by a court in prior ruling and to issues decided by necessary implication. *Bolden v. SEPTA*, 21 F.3d 29, 31 (3d Cir.1994) Neither is the doctrine limited to legal conclusions. It applies equally to factual findings. A leading commentator explains that "[i]f an attempt is made to press the same fact issue for a second time on an unchanged record, law-of-the-case reluctance approaches maximum force." 18B Wright, Miller and Cooper, *Federal Practice & Procedure*: Juris.2d 4478.5 (2002).

Plaintiff's "clarification" seeks to limit a factual finding of this Court. The finding in question supported the Court's ruling that standing was lacking. What the Court needed to find out was whether the assignment documents transferred the right to RICO claims from Captec to the Trust. It found they did not. Indeed, the Court found that *no* legal claims had been assigned. The Defendants argue, that this broad finding should apply equally to *all* legal claims of the Trust against the Defendants?

Defendants' point is a fair one. As a matter of efficiency, the finding that no legal claims were assigned should settle the issue. That would render the fraud claim futile. However, "[f]actual issues present *variable* opportunities for invoking the law of the case doctrine. *Id.* (emphasis added) Thus, the law of the case is to be applied flexibly. Reconsideration of a fact issue may be appropriate if there is new evidence, or if a change of procedural posture changes

27

the nature of the issue. *Id.* And here there is new evidence: the Trust offers proof–written and

oral—that Captec intended all along to assign its legal claims to it. The Court has already ruled

that this evidence may not be considered as part of Plaintiffs' Motion for Reconsideration and

has explained its reasoning. The fraud claim, however, has not progressed as far as the RICO

counts. The former claims were dismissed, not on their merits, but for failure to state a claim as

to Mrs. Bagga and Messrs Chawla. Now the Trust seeks to amend this count and rename it. The

proposed amendment to Count IX is now based on fraud and *conspiracy to commit* fraud. The

question is whether either cause of action states a claim against Mrs. Bagga or the Chawlas.

For purposes of stating a *fraud* claim against those persons, the proposed amendment

fails. All of the alleged actionable conduct was perpetrated by Pratpal Bagga. It was he who

made the alleged misrepresentation to the lenders. Nothing is alleged as to Mrs. Bagga on this

score. As to the Chawlas, they are alleged to have provided false information to Mr. Bagga who,

in turn, passed it along to the lenders. But because neither Mrs. Bagga, nor the Chawlas are

alleged to have made misrepresentation, there is no fraud claim stated as to them.

*Conspiracy to Commit Fraud*

As the Court noted in ruling on the motion to dismiss, the Plaintiffs sought to expand this

count to include conspiracy to defraud. *See* 365 B.R. at 568. In Pennsylvania, civil conspiracy is

pleaded by alleging: "(1) a combination of two or more persons acting with a common purpose

to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an

overt act done in pursuance of the common purpose; and (3) actual legal damage."

*ChantillyFarms, Inc. v. W. Pikeland Twp.,* 2001 WL 290645 *13 (E.D.Pa.) (quoting *Smith v.

Wagner,* 403 Pa.Super. 316, 322-23, 588 A.2d 1308, 1311-12 (Pa.Super.1991)) The standard of

pleadings for civil conspiracy based on fraud is high. *See Lum v. Bank of America*, 361 F.3d 217,

228 (3d Cir.2004) ("Because plaintiffs allege that the defendants accomplished the goal of their

conspiracy through fraud, the Amended Complaint is subject to Rule 9(b)")

Paragraphs 272-273 of the amendment set forth the agreement between the "Baggas and

the Chawlas." It is alleged that Khushvinder Bagga and Ravinder Chawla agreed with Pratpal

Bagga to fraudulently induce Captec to loan money. But is only Ravinder Chawla who is

alleged to have done anything affirmative to have furthered the conspiracy. He is alleged to

have provided false invoices to Captec which gave Mr. Bagga's loan application the appearance

of legitimacy. As to Mrs. Bagga, there is no mention of what overt acts she did as part of the

conspiracy. In sum, the Court concludes that the amendment to Count IX states a cause of action

for conspiracy to commit fraud as to Pratpal Bagga and Ravinder Chawla.

*The Bankruptcy Trustees' Standing to Raise RICO Claims*

The final request to amend revisits the issue of standing to raise RICO claims. It refers

back to the April Opinion on the motion to dismiss. There, the Court rejected Defendants'

argument that the Bankruptcy Trustees lacked standing as to the RICO claims. *See* 365 B.R. at

559. The parties will recall that the Defendants' objection was based on the equitable doctrine of

in *pari delicto*. The Bankruptcy Trustees' argument now moves forward in time to the February

6 ruling on the motion for summary judgment. While that ruling precluded the Trust from

raising RICO claims, it specifically stated that it did not extend to either of the Bankruptcy

Trustees because the Motion for Summary Judgment was not directed at them. The Court in that

Opinion understood — erroneously according to the Plaintiffs—that the Bankruptcy Trustees did

not seek to assert RICO claims. 382 B.R. at 266. That is not the case, the Bankruptcy Trustees

now explain.  Plaintiffs' Brief, 9; Reply Brief, 20-21.  Therefore, the Bankruptcy Trustees

request leave to replead the RICO claims.

In the April 2007 Opinion, the Court ruled on whether the Trust had adequately stated a

RICO claim.  The analysis there dealt with the four elements of RICO: racketeering, enterprise,

conduct and pattern set forth in RICO § 1962.  *See* 365 B.R. at 547 - 552.  *This* ruling must deal

with a more fundamental question: may the Bankruptcy Trustees *qua* Plaintiffs raise RICO

claims at all. Defendants say they may not, offering three reasons why: first, any injury which

the Debtors may have suffered were not proximately caused by RICO violations; second, that the

Bankruptcy Trustees' RICO claims are not predicated on "racketeering activity"; and third, that

the alleged harm resulting from the RICO violations—deepening the Debtors' already insolvent

state—is not legally cognizable.  *See* Defendants' Brief, 52.

*Causation and RICO Standing*

RICO § 1964 provides:

> Any person injured in his business or property *by reason of* a
> violation of section 1962 of this chapter may sue therefor in any
> appropriate United States district court and shall recover threefold
> the damages he sustains and the cost of the suit, including a
> reasonable attorney's fee, …

18 U.S.C. § 1964(c)(emphasis added).  To be a "person injured … by reason of a ... [RICO]

violation," a plaintiff must allege that his harm was proximately caused by that violation; "but

for" causation is insufficient.  *See Holmes v. SIPC*, 503 U.S. 258, 268 112 S.Ct. 1311, 1317

(1992).  What is required, then, is "some direct relationship between the injury asserted and the

injurious conduct alleged." *Id.*  Consistent with that standard, the Third Circuit has offered three

rationales for requiring direct harm:

(1) the directness of the injury-"the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing], as distinct from other, independent, factors;" '

(2) the difficulty of apportioning damages among potential plaintiffs-"allowing recovery by indirectly injured parties would require complicated rules for apportioning damages;" and,

(3) the possibility of other plaintiffs vindicating the goals of RICO-"direct victims could generally be counted on to vindicate the policies underlying" RICO in a better manner than indirect victims.

*Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 443 (3d Cir.2000)(quoting

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc*., 171 F.3d 912, 932 (3d

Cir.1999).  All three factors matter here, albeit in varying degrees.  First, it is difficult to quantify

what injuries the Debtors sustained as a result of the alleged racketeering acts.  That is certainly

not the case with the Trust.  The latter's damages are discrete: they loaned $4 million which

remains unpaid.  Ascertaining the damages to the Debtor corporations is not so simple.  The

corollary problem to that is how should any monetary recovered be shared as between the

directly injured Plaintiff (the Trust) and the collaterally aggrieved (the Debtors).  Fairness augers

in favor of making the defrauded lender whole first.  Indeed, in bankruptcy, creditors are given

priority over owners.  Moreover, the Trust's spearheading of this litigation confirms the third

factor: as the directly injured party, the Trust will more likely vindicate policies underlying

RICO.  It matters not that the Trust unknowingly proceeded without standing to do so.  It did

so–or at least it thought–as successor in interest to Captec.  In any event, the Trust has been

relentless in pressing RICO claims from the outset and, before its RICO claims were dismissed,

the Court found that it had sufficiently pleaded a RICO claim.  The Court notes also that the

31

Bankruptcy Trustees are not without other causes of action: the Complaint also pleads fiduciary

misfeasance and conversion.  All of this indicates to the Court that the Bankruptcy Trustees are

not the type of plaintiff intended by the statute.

*Were the Trustees Harmed as a Result of Racketeering?*

The second point raised by the Defendants with regard to the Bankruptcy Trustees'

standing to raise RICO also involves causation.  Instead of focusing on whether the

BankruptcyTrustees were harmed, it looks to whether any such harm resulted from racketeering

activity.  What is alleged as actionable conduct is mail and wire fraud.  That certainly harmed

Captec and, thereby, the Trust, because the Trust has yet to be paid back its loan and has

incurred substantial collection costs.  But the damage alleged to have been suffered by the

Debtor corporations involved diversion of funds, misuse of bankruptcy, and deepening

insolvency.  *See* Proposed Amended Complaint, ¶ 223.  None of that resulted directly from mail

or wire fraud.[7]  Those harms were the result of other, independent common law torts such as

conversion or breach of fiduciary duty.  *See* Defendants' Brief, 61-63.  The Court finds this

argument to be cogent.  Like the lack of direct harm resulting from the Defendants' fraud, there

is absent here any nexus between racketeering and the damages which the Bankruptcy Trustees

allege.

*The Bankruptcy Trustees, RICO Harm and Deepening of Insolvency*

The Defendants' final challenge to the Bankruptcy Trustees' standing to assert RICO

claims relates to damages.  The Proposed Amendment alleges that the RICO violations resulted,

---

[7] It is in this context that the Trustee's emphasis on the point that mail fraud does not require
reliance to be actionable is beside the point.  *See* Plaintiffs' Reply Brief, 24.  What matters here is direct
harm between the racketeering act and the person claiming harm.  That is something that the Bankruptcy
Trustees have not shown on the facts alleged.

among other things, in deepening the Debtors' insolvency. *See* ¶ 223(a). Defendants

stress—correctly so—that the Third Circuit has recently explained that deepening insolvency is

an independent cause of action and not a theory of damages. *See In re CitX Corp., Inc.*, 448 F.3d

672, 677 (3d Cir.2006) (explaining that the *Lafferty* decision "never held that [deepening

insolvency] was a valid theory of damages for an independent cause of action.") So even

assuming that the Bankruptcy Trustees' otherwise had RICO standing, they could not recover

damages for an increased level of insolvency.

*Conclusion*

Based on the above analysis, the request for leave to amend the Complaint so that the

Bankruptcy Trustees may assert RICO claims, is denied. Also, as herein discussed, the Trust's

Motion for Reconsideration is denied. The Motion for Leave to Amend the Complaint is granted

in part and denied in part, as previously indicated.

An appropriate Order follows:

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>July 22, 2008</u>